**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDWARD HADNOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17 C 7320** |
| | ) | |
| **COOK COUNTY ASSESSOR JOSEPH BERERIOS,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edward W. Hadnott is a former Cook County homeowner. In this lawsuit, Hadnott alleges that Joseph Berrios, the Cook County Assessor, has violated Hadnott's rights under the federal and state constitutions and Illinois law by over-assessing real properties in Cook County's "poor and minority neighborhoods." (Am. Compl. [17], at 6.) If the allegations of Plaintiff's complaint and media reports are to be believed, the practices of the Assessor are indeed troubling.[1] The court takes judicial notice that Hadnott is not alone in his concerns; two Chicago neighborhood associations have sued Mr. Berrios and Cook County in state court, alleging that "Joseph Berrios, as the Cook County Assessor, systematically and illegally shifts residential property tax burdens in Cook County both from property owners in majority-White neighborhoods

---

[1] *The Chicago Tribune* and *ProPublica Illinois*'s collaborative investigation of the Cook County Assessor's office during 2017 and 2018 put a spotlight on the office's assessment policies and appeals process. CHICAGO TRIBUNE, *The Tax Divide*, http://www.chicagotribune.com/news/watchdog/taxdivide (last visited Sept. 12, 2018); PROPUBLICA ILLINOIS, *The Tax Divide*, https://www.propublica.org/series/the-tax-divide (last visited Sept. 12, 2018). *See also* CIVIC CONSULTING ALLIANCE, RESIDENTIAL PROPERTY ASSESSMENT IN COOK COUNTY: SUMMARY OF ANALYTICAL FINDINGS 11 (Feb 15, 2018), http://www.cookcountyassessor.com/assets/forms/CivicConsultingAllianceStudyResults.pdf (finding that "outcomes produced by the current [assessment] system are much more regressive than industry standards recommend"); Susie Allen, *Value Judgment*, 110 U. CHI. MAG., No. 4, Summer 2018, at 14, 15 (describing the work of Harris School of Public Policy professor Christopher Berry to provide the Cook County Assessor with a new computer model for property assessment, following former Assessor James Houlihan's recognition that past assessments had been flawed, and noting the new model's subsequent non-implementation under Mr. Berrios).

to property owners in majority-Hispanic and majority-African American neighborhoods and from the rich to the poor." *Brighton Park Neighborhood Council and Logan Square Neighborhood Association v. Berrios*, Complaint for Injunctive and Other Relief, No. 2017 CH 16453, ¶ 1. Any governmental program that treats citizens unfairly breeds distrust and cynicism. For the reasons explained here, however, the Tax Injunction Act and principles of comity preclude the federal court's exercise of jurisdiction over this dispute. Accordingly, Defendant's Motion to Dismiss [18] is granted.

## BACKGROUND

Until November 27, 2017, Plaintiff Edward Hadnott owned a single-family home in Chicago Heights. (Am. Compl. [17], at 6.) The Cook County Assessor's office assessed the land on which that home sits at $18,000, and the "total assessment"—presumably the assessed value of the land plus the home—totaled $36,420.[2] (*Id.*) Plaintiff alleges that this valuation "over-assessed the land by 600%" and that "[t]he total assessment was 233% over the actual value."[3] (*Id.*)

Mr. Hadnott "filed [an appeal of the assessment] every year for the last 5 years." (*Id.*) On October 17, 2017 (days after he filed his initial complaint in this case), he received a letter "stating that the appeal had been denied." (*Id.*) Plaintiff does not specify to whom he appealed, nor does he identify which of the five appeals was addressed in the October 2017 letter. Ultimately, in response to what he deems unfair assessments, Plaintiff sold his house. He alleges it was "listed at its fair market value and sold for $15,500 on November 27, 2017." (*Id.*)

---

[2] Plaintiff does not provide the date of this assessment. The court presumes these figures represent the home's most recent assessment from the Cook County Assessor. Pursuant to 35 ILCS 200/9-200, property in Cook County must be reassessed every three years.

[3] Plaintiff appears to calculate these percentages based on his allegations that the "real land value is between $1,500 and $3,000" and that the home sold for $15,500 in November 2017. (Am. Compl. [17], at 6.) He does not provide information on how he determined the "real land value."

To illustrate the alleged bias in the Assessor's operations, Plaintiff identifies another home, located at 1091 Cherry Street in Winnetka, that was assessed at "$535,130, which is 28% below the homes [sic] actual value." (*Id.* at 5.) The land on which that home sits "was assessed at $141,600 which is less than half of the actual land value." (*Id.*) Plaintiff does not provide dates for the assessment value or actual value. Another property, 1493 Asbury Avenue,[4] "sold for $750,000 in June of 2017." (*Id.*) The property taxes on that property were $11,295.00, "which is 1.5% of market value." (*Id.*)

Plaintiff believes the unfairness reflected in these assessments violates the Fourteenth Amendment to the United States Constitution, the Illinois Constitution, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5(a). Plaintiff alleges that Defendant "taxes wealthy majority neighborhoods at approximately two percent of assessed valuation while taxing poor minority neighborhoods at three to twenty percent of assessed valuation." (*Id.*) Plaintiff further asserts that Defendant, who is "the current chairman of the Cook County Democratic Party, the 31st ward Democratic committeeman, and the current Cook County Assessor," "accepts political donations from tax attorneys, a number of whom Hadnott identifies in his complaint. (*Id.*) In "conspiracy" with these attorneys, Plaintiff alleges, Defendant "gives wealthy high value property owners an advantage while keeping poor minority property owners at a disadvantage." (*Id.* at 3.)

The factual assertions underlying these claims are a bit thin: In his *pro se* amended complaint [17], Plaintiff asserts that Defendant "fails to use market data to estimate assessed valuations and fails to be transparent in how he values 1.8 million parcels in Cook County" (*id.* at 5), and that Defendant relies on "outdated sales" figures (*id.* at 7), but beyond that, simply assures

---

[4] Plaintiff does not otherwise identify the location for this property, but the court takes judicial notice that there is a residence at 1493 Asbury Avenue, in the north shore suburb of Winnetka, and another at 1493 Asbury Avenue in neighboring Evanston. *1493 Asbury Avenue, Winnetka, Illinois 60093*, BING, https://binged.it/2IhiGHv (last visited Sept. 24, 2018); *1493 Asbury Ave, Evanston, IL 60201*, BING, https://binged.it/2pvTWm5 (last visited Sept. 24, 2018).

the court that he "can provide as many examples as the court sees fit of high dollar under assessed real estate in predominantly white affluent New Trier Township." (*Id.* at 6.) He provides no factual allegations in support of his claim of conspiracy between Defendant and tax attorneys. As relief, Hadnott requests damages, including punitive damages, in the amount of $5,000,000 for his own "overpayment of real estate taxes and the resulting loss of value caused by the over taxation over the past thirty years." (Am. Compl. [17], at 6 ¶ 1; Rep. to 2nd Motion to Dismiss [21] ¶ 1.) He also seeks to recover $100,000,000 in damages for "other minority tax payers in Cook County" for overpayment and loss in value. (Am. Compl. [17], at 6 ¶ 2.) In addition to damages, Plaintiff asks the court to supervise County assessment practices and impose a variety of corrective measures:

- The Plaintiff Edward W. Hadnott is seeking oversight of the Cook County Assessor's office by a federal judge to ensure that the assessor complies with the changes.
- The Cook County Assessor must derive a structure to tax homeowners at a fair flat rate for every residential property which should be between 2 and 3 percent. The Cook County Assessor should make available how he estimates land value and market value.
- The Cook County Assessor should assess land and improvements using market data not outdated sales.
- The Cook County Assessor should have an assessor that is a proven valuation professional instead of a politician.
- The Cook County Assessor should not be allowed to take any donations from attorney [sic] representing parties in tax appeals.

(*Id.* at 6–7.)[5] Defendant hasmoved to dismiss pursuant to FED. R. CIV. P. 12(b)(1) [18], arguing that the Tax Injunction Act, 28 U.S.C. § 1341, strips this court of subject matter jurisdiction and that principles of comity bar Plaintiff's claims.

---

[5] Plaintiff requests other injunctive relief outside of the "relief" section of his complaint. These requests include: "The Cook County Assessor should . . . not be allowed to accept campaign donations from attorneys or parties protesting their property taxes"; "An immediate injunction should be granted on the lack of transparency and methodology used to

## DISCUSSION

### I. Legal Standard

In considering a motion to dismiss for lack of subject matter jurisdiction, the "district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999)). " 'The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003), *as amended* (July 21, 2003) (quoting *Long,* 182 F.3d at 554 (7th Cir. 1999)).

### II. The Comity Doctrine Bars Plaintiff's § 1983 Claims

Section 1983 provides a cause of action for individuals who have suffered, at the hands of anyone acting "under color" of the law, a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. On its face, Plaintiff Hadnott's allegation that Defendant Berrios violated Plaintiff's and other minority taxpayers' Fourteenth Amendment rights would appear to fall within the statute. *See Cosgriff v. Cty. of Winnebago*, 876 F.3d 912, 915 (7th Cir. 2017), *cert. denied sub nom*. *Cosgriff v. Winnebago Cty.*, 138 S. Ct. 1991 (2018) ("Congress 'cut a broad swath' when it enacted § 1983, and the statute appears by its terms to give a federal cause of action to state taxpayers.") (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103–04 (1981). As the Seventh Circuit explained in *Cosgriff*, however, "the comity doctrine, which 'counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction' [ ] has limited § 1983's scope." *Cosgriff*, 876 F.3d at 915 (citing *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010)).

---

estimate assessed valuations"; "An immediate injunction should be granted on all Class 8's in Cook County"; and "An investigation should be conducted for all tax appeals in Cook County in the past ten years." (Am. Compl. [17] at 5, ¶¶ 5–8.)

Comity reflects, in part, a "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Levin*, 560 U.S. at 421 (2010) (quoting *Fair Assessment*, 454 U.S. at 112). One of these separate functions is taxation. *See Levin*, 560 U.S. at 421–22 ("Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity. For '[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.'") (quoting *Dows v. Chicago*, 11 Wall. 108, 110,, 20 L.Ed. 65 (1871)).

Under the comity doctrine, the Supreme Court has ruled that district courts should abstain from hearing § 1983 suits that deal with state taxation when there is an "adequate, plain, and complete" remedy available to plaintiffs in state courts. *See Fair Assessment,* 454 U.S. at 116; *Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 713, 714 (7th Cir. 2013) (explaining that in applying *Fair Assessment*'s "adequate, plain, and complete" standard, the Seventh Circuit "ha[s] used the comparable standard from the Tax Injunction Act, which bars federal courts from enjoining state taxes where a 'plain, speedy and efficient' state remedy is available").

Illinois law provides a detailed process for appeals from property assessments. A Cook County resident can file an appeal with the County Assessor; seek "re-review," and if still unsatisfied, file an appeal with the Cook County Board of Review. See generally http://www.cookcountyassessor.com/Resources/Frequently-Asked-Questions.aspx . Following those procedures, a dissatisfied taxpayer may, within 30 days, "appeal the decision to the Property Tax Appeal Board for review." Whether or not the taxpayer appeals to the Property Tax Appeal Board, he or she is entitled to seek review in the state courts. 35 Ill. Comp. Stat. 200/16-160; *see also id.* at 200/23-15 (providing the tax objection hearing procedures), 200/16-195 (providing for the review of decisions by the Property Tax Appeal Board); *Capra* 733 F.3d at 714–17 (finding the

Illinois state remedy for challenges to state and local tax collection adequate for purposes of satisfying *Fair Assessment*).

Plaintiff Hadnott has not sufficiently alleged that this process is inadequate. He makes no direct assertions regarding the inadequacy of the multi-layered state appeals process and has not even identified which agency or reviewing body allegedly provided "no evidence" when it denied his appeal. (Am. Compl. [17], at 6.) Nor has he explained how the state judicial review process is unavailable or inadequate. *See Capra*, 733 F.3d at 715 ("[T]hrough either the PTAB [Property Tax Appeal Board] or the circuit courts, any statutory or constitutional claims can be heard by a state court of general jurisdiction and can be appealed through the Illinois court system to the Illinois Supreme Court and the Supreme Court of the United States"). The closest he comes to addressing that issue is the statement in his memorandum of law that "Justice Brennan argued that comity could be a wise public policy but not an inexorable constitutional command." (Pl.'s Resp. to 2nd Motion to Dismiss [21] ¶ 2.)[6] But Justice Brennan's comment in a concurring opinion in *Fair Assessment* does not alter the holding in that case: property owners' challenge to an allegedly unconstitutional tax assessment system was barred by the doctrine of comity.

With respect to judicial review, Plaintiff asserts that "[i]t is commonly believed that Cook County Judges are inextricably entwined with county government . . . [and take] a loss of revenue or a loss of favor of the Cook County leaders who pay their salaries into consideration when adjudicating a particular case." (Resp. to 2nd Motion to Dismiss [21] ¶ 2.) Notably, a similar argument was rejected by the Seventh Circuit in *Capra*. There, plaintiffs who challenged the rescission of property tax reductions argued that "the entire Cook County judiciary 'could not adequately hear these specific cases' because the cases are highly political and 'against the man

---

[6] The court's own research suggests the source is David Fautsch, Note, *The Tax Injunction Act and Federal Jurisdiction: Reasoning from the Underlying Goals of Federalism and Comity*, 108 MICH. L. REV. 795, 804 (2010).

who selected the majority of the county judiciary,' referring to defendant Joseph Berrios." *Id*. at 715. The Seventh Circuit quickly dismissed this argument:

> Plaintiffs' argument amounts in essence to an argument that some issues and claims are, as a matter of federal constitutional law, simply too hot for elected state judges to handle fairly. To accept this theory would both accept an extraordinary expansion of federal power and endorse a sweeping condemnation of the state judiciary.

*Id.* at 715-16. Plaintiff here, similarly, offers no basis for a conclusion that the remedy provided under Illinois law for challenging Cook County tax assessments is inadequate.

**III. This Court Lacks Subject Matter Jurisdiction under the Tax Injunction Act**

The availability of state court review precludes this case for another reason as well. "Federal courts are courts of limited jurisdiction." *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009) (citations omitted). One of the limitations to this jurisdiction comes from the Tax Injunction Act (28 U.S.C. § 1341, hereinafter "TIA"), which limits federal court jurisdiction by "prohibit[ing] lower federal courts from restraining 'the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.' " *Levin*, 560 U.S. at 417 (quoting 28 U.S.C. § 1341). *See California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (declaring that the TIA prohibits declaratory relief as well as injunctive relief). So long as state courts provide a "plain, speedy, and efficient remedy" for taxpayers wishing to challenge state or local taxation, federal courts are stripped of any subject matter jurisdiction they may have over claims for injunctive or declaratory relief, "even when the claim challenges the constitutionality of the tax." *Scott Air Force Base Properties, LLC v. Cty. of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008).

As noted above, Plaintiff has not argued that the Illinois appeals process is not "plain, speedy, and efficient." Instead, he contends that his claim falls under two purported "exceptions" to the TIA (Resp. to 2nd Motion to Dismiss [21] ¶ 2), addressed below.

**A. The Hibbs "Exception"**

First, citing *Hibbs. v. Winn*, 542 U.S. 88, 108 (2004), Plaintiff argues that the TIA "allows Federal jurisdiction where the relief suggested by the third party plaintiff would result in an increase in the tax revenue." (Resp. to 2nd Motion to Dismiss [21] ¶ 2(A).) Plaintiff Hadnott is not a "third party plaintiff," and Plaintiff's reading of *Hibbs* as authorizing his complaint in this case is overbroad. In *Hibbs*, a group of Arizona taxpayers challenged an Arizona income tax credit available to those who made contributions to "school tuition organizations." 542 U.S. at 94–95. The plaintiffs there argued that the credit was a violation of the Establishment Clause because the law permitted those organizations to discriminate on the basis of religion. *Id*. at 95. Instead of contesting their own tax liability, the *Hibbs* plaintiffs "sought declaratory and injunctive relief and an order requiring the organizations to pay sums still in their possession into the State's general fund." *Levin*, 560 U.S. at 424 (citing *Hibbs*, 542 U.S. at 96). The *Hibbs* Court held that the TIA did not limit federal court jurisdiction over the claim, even though the plaintiffs sought declaratory and injunctive relief: "Plaintiffs-respondents do not contest their own tax liability. Nor do they seek to impede Arizona's receipt of tax revenues. Their suit, we hold, is not the kind § 1341 proscribes." *Hibbs*, 542 U.S. at 93.

In so ruling, the Court reasoned that the TIA's purpose is to "shield[ ] state tax collections from federal-court restraints," not to "prevent federal-court interference with all aspects of state tax administration." *Id.* at 104 (internal quotations and citation omitted). Significantly, the *Hibbs* plaintiffs were challenging an unconstitutional tax break and asking the court to order non-government entities to return money to the state, resulting in an increase in state revenue. Plaintiff Hadnott asserts that the injunctive relief he requests would have the same effect, but that assumption appears to rest on little more than speculation.[7] In any event, nothing in *Hibbs* would

[7] Plaintiff notes in his Response brief that an office building in Chicago was assessed at $392 million dollars one year after it sold for $850 million. (Resp. to 2nd Motion to Dismiss [21], ¶ 2(A).) He also provides a screenshot of a local newspaper webpage that lists the

authorize a federal district court its own preferred tax rate for the County Assessor.

Notably, the *Hibbs* court's holding relied on the fact that those plaintiffs were not challenging their own taxation, but the taxation (or more accurately, non-taxation) of others. Indeed, "numerous federal-court decisions . . . have reached the merits of third-party constitutional challenges to tax benefits without mentioning the TIA." *Id*. at 110–11 (collecting cases). *See also Levin*, 560 U.S. at 425 (explaining that *Hibbs* "was 'not rationally distinguishable' from . . . [cases] in which federal courts had entertained civil rights challenges to state tax credits") (citing *Hibbs*, 542 U.S. at 94–95, 110–12). In contrast, the entire premise of Hadnott's case is that he himself and "other minority tax payers" are treated differently than taxpayers in "white majority" neighborhoods. Plaintiff Hadnott alleges personal injury and requests individualized relief; he is not a third-party plaintiff.[8]

### B. The Fourteenth Amendment "Exception"

Second, Plaintiff suggests that the Fourteenth Amendment itself permits tax refund suits to be filed in federal district court, despite the TIA.[9] (Resp. to 2nd Motion to Dismiss [21] ¶ 2(B).)

---

names of law firms, tax appeal values, and other data, and asserts that this data demonstrates that the injunction he seeks would result in a net increase in tax revenue. (*Id*.) The court is unable to draw conclusions from a single building's assessment and the information in the screenshot, but recognizes that a flat tax rate at some level would yield the same revenue the Assessor is now recovering.

[8] For a related reason, Plaintiff has no basis to assert a "class of one" equal protection claim, as he suggests cursorily in his response brief. *Cf. Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). That suggestion is defeated by Plaintiff's claims that the Assessor violates the rights of both himself and "other minority taxpayers" in Cook County. (To the extent Hadnott seeks to represent those other taxpayers under any theory, the court notes that a *pro se* litigant is ordinarily not an adequate representative of the interests of others, *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015).)

[9] Plaintiff argues in his Response brief: "If there is a violation that is ongoing as in this case a party can bring a federal lawsuit seeking injunctive or declaratory relief for two types of claims. One of which is claims seeking a refund of taxes paid unlawfully." (Resp. to 2nd Motion to Dismiss [21] ¶ 2(B).) In making this argument, Plaintiff cites *Fitzpatrick v. Bitzer* (without

The court notes, first, that Plaintiff's allegations are most consistent with a § 1983 claim for damages, not a tax refund claim. (*See id.* ¶ 1 (arguing that the alleged relationship between Defendant and "tax attorneys" creates a "conspiracy against poor and minority properties [sic] owners who deserve protection under 42 U.S.C. Section 1983").) Even if construed as a refund claim, however, such suits fall within the TIA's "undisputed compass." *Hibbs*, 542 U.S. at 106.

State taxation challenges claiming constitutional violations do not fall outside the TIA's purview. The Seventh Circuit has consistently held that "[t]he TIA applies to any claim in federal district court seeking declaratory or injunctive relief from state or municipal taxes, even when the claim challenges the constitutionality of the tax." *Kathrein v. City of Evanston,* 636 F.3d 906, 911 (7th Cir. 2011) (citing *Scott Air Force Base*, 548 F.3d at 520). *See also Cosgriff*, 872 F.3d 912, 916 (7th Cir. 2017) (rejecting plaintiffs' "attempt to remove their claims from the purview of comity considerations by arguing that they are not concerned about the tax that was imposed on them, but they are instead concerned about the defendants' unconstitutional actions against them"). Because allegations of constitutional violations overcome neither the TIA's jurisdictional bar nor considerations of comity, Plaintiff's claims for injunctive relief from Defendant's alleged constitutional violations are dismissed.

## IV. Remaining State Claims

Plaintiff's remaining claims arise under state law. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims . . . , which the plaintiff can then prosecute in

---

citation, but presumably 427 U.S. 445 (1976)) and veers into a state sovereign immunity argument. Similarly, in his own motion for summary judgment [23], Plaintiff refers (again, without citations) to Supreme Court decisions on sovereign immunity, *see Jinks v. Richland Cty.,* 538 U.S. 456 (2003); *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274 (1977). Defendant notes that punitive damages are not available to the extent he is sued in his official capacity (Motion to Dismiss [18] at 9), but has not invoked sovereign immunity as a basis for dismissal of the complaint. As the complaint is being dismissed for other reasons, it need not address sovereign immunity.

state court." *Al's Serv. Ctr. v. BP Prod. No. Am, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). That result is particularly appropriate here, in light of the fact that, as noted earlier, a challenge to the property tax assessment system is currently pending in state court. The court relinquishes jurisdiction over Plaintiff's remaining state law claims.

**CONCLUSION**

The comity doctrine counsels this court to dismiss Plaintiff's constitutional claims for injunctive relief, as well as Plaintiff's § 1983 claims for damages. The TIA similarly prohibits this court from exercising subject matter jurisdiction over Plaintiff's claims for injunctive relief.

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [18] pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction is granted. Plaintiff's motion for summary judgment [23] is stricken without prejudice. Judgment will enter in favor of Defendant on Plaintiff's federal claims. His state law claims are dismissed without prejudice.

ENTER:

Date: September 25, 2018

REBECCA R. PALLMEYER
United States District Judge